**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., as successor in interest to FDIC, receiver for Midwest Bank and Trust Company, | ) ) ) | Case No. 13-cv-06000 Hon. James F. Holderman |
| | ) | Property Addresses: |
| Plaintiff, | ) ) | 4471 Lawn Avenue Western Springs, Illinois 60558 |
| v. | ) ) | 187-191 North York Road |
| ANCHOR PROPERTIES INC., an Illinois corporation, and EMIN TULUCE, individually, | ) ) ) ) | Elmhurst, Illinois 60126 410 Chestnut Street Hinsdale, Illinois 60521 |
| Defendants. | ) ) | 4844 West Main Street Skokie, Illinois 60077 |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO COMPLAINT FOR FORECLOSURE AND OTHER RELIEF**

NOW COME Defendants, Anchor Properties, Inc. and Emin Tuluce ("Defendants"), by their attorneys, Ariel Weissberg, Rakesh Khanna and the law firm of Weissberg and Associates, Ltd. (collectively, "W&A"), and as their *Defendants' Answer and Affirmative Defenses to Complaint for Foreclosure and Other Relief*, state as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

### PARTIES

1.      FirstMerit Bank, N.A. ("FirstMerit") is a national banking association with its principal place of business in Akron, Ohio.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 1 of the Complaint, neither admit nor deny the allegations of paragraph 1 of the Complaint, and demands strict proof thereof.

2.      FirstMerit is successor in interest to the Federal Deposit Insurance Corporation ("FDIC"), as receiver for Midwest Bank and Trust Company ("Midwest") under 12 U.S.C. § 1821(d)(2)(A), pursuant to a Purchase and Assumption Agreement dated May 14, 2010 by and between FirstMerit and the FDIC.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 2 of the Complaint, neither admit nor deny the allegations of paragraph 2 of the Complaint, and demands strict proof thereof.

3.      Anchor Properties, Inc. ("Anchor") is an Illinois corporation with its principal place of business at 5057 North Harlem Avenue, Chicago, Illinois 60056.

**ANSWER**:

Defendants admit the allegations contained in paragraph 3 of the Complaint.

4.      Emin Tuluce ("Tuluce") is an adult individual residing in South Barrington, Illinois.

**ANSWER**:

Defendants admit the allegations contained in paragraph 4 of the Complaint.

5.      Tuluce is the president and registered agent of Anchor.

**ANSWER**:

Defendants admit the allegations contained in paragraph 5 of the Complaint.

### JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. § 1332(a) because FirstMerit is a citizen of Ohio pursuant to 28 U.S.C. § 1348, each of the Defendants are citizens of states other than Ohio, and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00

**ANSWER**:

Defendants admit the allegations contained in paragraph 6 of the Complaint.

7.      Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to FirstMerit's claims occurred in this judicial District and the real property being foreclosed upon is located in this District.

**ANSWER**:

Defendants admit the allegations contained in paragraph 7 of the Complaint.

### THE ENTITY LOANS AND MORTGAGES

8.      In 2007, Midwest entered into Business Loan Agreements with Everett Builders, Inc., EB York Road, LLC, and 410 Chestnut LLC (collectively the "Entities"), whereby Midwest loaned a total of $4,040,000.00 to the Entities (the "Entity Loans").

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 8 of the Complaint, neither admit nor deny the allegations of paragraph 8 of the Complaint, and demands strict proof thereof.

9.      In 2007, the Entities executed Promissory Notes in favor of Midwest, whereby the Entities agreed to repay the principal amount of $4,040,000.00 (the "Entity Notes").  True and correct copies of the Entity Notes are attached hereto as **Exhibit A**.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 9 of the Complaint, neither admit nor deny the allegations of paragraph 9 of the Complaint, and demands strict proof thereof.

10.     The Notes were secured by Mortgages executed in 2007 in favor of Midwest (the "Entity Mortgages") on the properties commonly known as 4471 Lawn Avenue, Western Springs, Illinois 60558 (the "Western Springs Property"); 187-191 North York Road, Elmhurst, Illinois 60126 (the "Elmhurst Property"); and 410 Chestnut Street, Hinsdale, Illinois 60521 (the "Hinsdale Property").  True and correct copies of the Entity Mortgages are attached hereto as **Exhibit B**.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 10 of the Complaint, neither admit nor deny the allegations of paragraph 10 of the Complaint, and demands strict proof thereof.

**COLLATERAL ASSIGNMENTS AND $4,027,550.68 LOAN TO ANCHOR**

11.     On June 30, 2008, Midwest and Anchor entered into an Agreement for the Purchase and Sale of Loan Documents (the "Agreement"), whereby Anchor purchased the Entity Loans, Entity Notes, and Entity Mortgages from Midwest (collectively the "Entity Loan Documents").  A true and correct copy of the Agreement is attached hereto as **Exhibit C**.

**ANSWER**:

Defendants admit they entered into the Agreement attached as Exhibit C and further states that Exhibit C speaks for itself and denies any allegations inconsistent therewith.

12.     Anchor funded this purchase through a $4,027,550.68 loan from Midwest, which was evidenced by a Business Loan Agreement (the "$4,027,550.68 Loan") executed on June 30, 2008.  A true and correct copy of the $4,027,550.68 Loan is attached hereto as **Exhibit D**.

**ANSWER**:

Defendants admit the allegations of paragraph 12.

- 4 -

13.     The $4,027,550.68 Loan was evidenced in part by a Promissory Note executed by Anchor on June 30, 2008, the maturity date of which was extended by supplemental Promissory Notes dated July 2, 2009, October 30, 2009, February 5, 2010, and May 5, 2010, whereby Anchor agreed to repay the principal amount of $4,027,550.68 (collectively the "<u>$4,027,550.68 Note</u>").  A true and correct copy of the $4,027,550.68 Note is attached hereto as **Exhibit E**.

**ANSWER**:

Defendants admit the allegations of paragraph 13.

14.     On June 30, 2008, Tuluce executed a Commercial Guaranty in favor of Midwest, whereby Tuluce guaranteed the repayment of the $4,027,550.68 Loan (the "<u>$4,027,550.68 Guaranty</u>").  A true and correct copy of the $4,027,550.68 Guaranty is attached hereto as **Exhibit F**.

**ANSWER**:

Defendants admit the allegations of paragraph 14.

15.     The $4,027,550.68 Note was also secured by Collateral Assignments of Note and Mortgage Documents (the "<u>Western Springs Collateral Assignment</u>", the "<u>Elmhurst Collateral Assignment</u>", and the "<u>Hinsdale Collateral Assignment</u>") executed by the parties on June 30, 2008, whereby Anchor granted Midwest a security interest in the Entity Notes and Entity Mortgages.  True and correct copies of the Collateral Assignments are attached hereto as **Exhibit G**, **Exhibit H**, and **Exhibit I**, respectively.

**ANSWER**:

Defendants state that paragraph 15 states a legal conclusion for which no response is proper or required and accordingly, deny same.

16.     Pursuant to the three Collateral Assignments, Anchor agreed to "pay over to [Midwest] all amounts received on account of the Mortgage Documents *(whether from Owner or any other source including judicial sales pursuant to foreclosure of the Mortgage)…*"   See **Exhibit G**, **Exhibit H**, and **Exhibit I**, para. 4(a).  (Emphasis in originals.)

**ANSWER**:

Defendants state that the documents speak for themselves and deny all allegations in paragraph 16 inconsistent therewith.

17.     The three Collateral Assignments also provide that:

 [Anchor] shall not, without first obtaining [Midwest's] written consent to the terms thereof: (a) sell *(or cause the sale)* of the Mortgaged Property, including sales by court order pursuant to a judgment of foreclosure … In all cases, [Midwest] may condition its consent to the foregoing on the delivery by [Anchor] … of a separate first priority mortgage against the Mortgaged Property to become effective and to be recorded immediately upon [Anchor] becoming the title holder to the Mortgaged Property in order to secure the repayment of the [Anchor] Note.

See **Exhibit G**, **Exhibit H**, and **Exhibit I**, para. 6.  (Emphasis in originals.)

**ANSWER**:

Defendants state that the documents speak for themselves and deny all allegations in paragraph 17 inconsistent therewith.

18.     The three Collateral Assignments then provide, in bolded print, that:

**IN THE EVENT BORROWER TAKES TITLE TO THE MORTGAGED PROPERTY AND FAILS TO DELIVER THE REQUIRED SUBSTITUTE MORTGAGE *(AND RELATED DOCUMENTS)*, THIS AGREEMENT SHALL BE CONVERTED INTO AND SHALL BE DEEMED A MORTGAGE UPON BORROWER'S INTEREST IN THE MORTGAGED PROPERTY *(AND ALL RENTS, PROCEEDS AND PROFITS THEREFROM)* IMMEDIATELY UPON BORROWER'S ACQUISITION THEREOF.**

See **Exhibit G**, **Exhibit H**, and **Exhibit I**, para. 6.  (Emphasis in originals.)

**ANSWER:**

Defendants state that the documents speak for themselves and deny all allegations in paragraph 18 inconsistent therewith.

19.     Prior to assigning the Entity Loan Documents to Anchor and executing the Collateral Assignments, Midwest had instituted the following foreclosure proceedings (the "Entity Foreclosures"):

>    a.  Complaint for foreclosure against Everett Builders, Inc. on the Western Springs Property, filed on December 19, 2007 in Cook County;
>
>    b.  Complaint for foreclosure against EB York Road LLC on the Elmhurst Property, filed on December 18, 2007 in DuPage County; and
>
>    c.  Complaint for foreclosure against 410 Chestnut, LLC on the Hinsdale Property, filed on December 18, 2007 in DuPage County.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 19 of the Complaint, neither admit nor deny the allegations of paragraph 19 of the Complaint, and demands strict proof thereof.

20.     Following Anchor's purchase of the Entity Loan Documents from Midwest, Midwest did not dismiss the Entity Foreclosures, but instead permitted Anchor to substitute in as party plaintiff.

**ANSWER**:

Defendants admit the allegations contained in paragraph 20 of the Complaint.

21.     On September 24, 2009, Anchor obtained a judgment of foreclosure and sale against the Western Springs Property.

**ANSWER**:

Defendants admit the allegations contained in paragraph 21 of the Complaint.

22.     On April 13, 2009, Anchor obtained a judgment of foreclosure and sale against the Elmhurst Property.

**ANSWER**:

Defendants admit the allegations contained in paragraph 22 of the Complaint.

23.     On April 13, 2009, Anchor obtained a judgment of foreclosure and sale against the Hinsdale Property.

**ANSWER**:

Defendants admit the allegations contained in paragraph 23 of the Complaint.

24.     Pursuant to the judgments in the Entity Foreclosures, the Western Springs, Elmhurst, and Hinsdale Properties were sold at judicial sales.

**ANSWER**:

Defendants admit the allegations contained in paragraph 24 of the Complaint.

25.     At each judicial sale, Anchor was the highest and best bidder, and Anchor thereby obtained possession of the Western Springs, Elmhurst, and Hinsdale Properties.

**ANSWER**:

Defendants admit the allegations contained in paragraph 25 of the Complaint.

26.     Anchor failed to obtain Midwest's or FirstMerit's written consent to the judicial sales, as required by the three Collateral Assignments.

**ANSWER**:

Defendants deny there were required to get Midwest or First Merits written consent.

- 8 -

27. Following the sale, Anchor failed to execute and deliver first priority mortgages on the Western Springs, Elmhurst, and Hinsdale Properties to Midwest or FirstMerit, as required by the Collateral Agreements.

**ANSWER**:

Defendants deny there were required to execute and deliver first priority mortgages to the properties.

### $400,000.00 LOAN TO ANCHOR

28. In 2008, FirstMerit loaned an additional $400,000.00 to Anchor, which was evidenced in part by a Promissory Note executed by Anchor on June 30, 2008, the maturity date of which was extended by supplemental Promissory Notes dated July 2, 2009, October 30, 2009, February 5, 2010, and May 5, 2010, whereby Anchor agreed to repay the principal amount of $400,000.00 (collectively the "$400,000.00 Note").  A true and correct copy of the $400,000.00 Note is attached hereto as **Exhibit J**.

**ANSWER**:

Defendants admit the allegations of paragraph 28.

29. On July 10, 2008, Tuluce executed a Commercial Guaranty in favor of Midwest, whereby Tuluce guaranteed the repayment of the $400,000.00 Loan (the "$400,000.00 Guaranty").  A true and correct copy of the $400,000.00 Guaranty is attached hereto as **Exhibit K**.

**ANSWER**:

Defendants state that the document speaks for itself and deny any allegations inconsistent therewith.

30.    In connection with the final promissory Note dated May 5, 2010, Midwest entered into a Business Loan Agreement with Anchor, whereby Midwest further documented the loan of $400,000.00 to Anchor (the "$400,000.00 Loan").   A true and correct copy of the $400,000.00 Loan is attached hereto as **Exhibit L**.

**ANSWER**:

Defendants state that the document speaks for itself and deny any allegations inconsistent therewith.

31.    The $400,000.00 Note was secured by Mortgages executed on May 5, 2010 in favor of Midwest on the Western Springs Property (the "Western Springs Mortgage"), the Elmhurst Property (the "Elmhurst Mortgage"), and the Hinsdale Property (the "Hinsdale Mortgage").  True and correct copies of the Western Spring Mortgage, Elmhurst Mortgage, and Hinsdale Mortgage are attached hereto as **Exhibit M**, **Exhibit N**, and **Exhibit O**, respectively.

**ANSWER**:

Defendants deny the allegations of paragraph 31.

### $386,193.66 LOAN TO ANCHOR

32.    On March 27, 2008, Midwest entered into a Business Loan Agreement with Anchor, whereby Midwest loaned a total of $386,250.00 to Anchor, which loan amount was subsequently reduced to $386,193.66 (the "$386,193.66 Loan").  A true and correct copy of the $386,193.66 Loan is attached hereto as **Exhibit P**.

**ANSWER**:

Defendants admit the allegations of paragraph 32.

33.    The $386,193.66 Loan was evidenced in part by a Promissory Note executed by Anchor on March 27, 2008, the maturity date of which was extended by supplemental

Promissory Notes dated March 27, 2009, June 25, 2009, and November 21, 2009, and Amendments to Note dated November 5, 2010 and October 31, 2011, whereby Anchor agreed to repay the principal amount of $386,193.66 (collectively the "$386,193.66 Note"). A true and correct copy of the $386,193.66 Note is attached hereto as **Exhibit Q**.

**ANSWER**:

Defendants admit the allegations of paragraph 33.

34. The $386,193.66 Note was secured by a Mortgage executed on March 27, 2008 in favor of Midwest on the property commonly known as 4844 Main Street, Skokie, Illinois 60077 (the "Skokie Mortgage"). A true and correct copy of the Skokie Mortgage is attached hereto as **Exhibit R**.

**ANSWER**:

Defendants admit the allegations of paragraph 34.

35. Commercial Guaranty in favor of Midwest, whereby Tuluce guaranteed the repayment of the $386,193.66 Loan (the "$386,193.66 Guaranty"). A true and correct copy of the $386,193.66 Guaranty is attached hereto as **Exhibit S**.

**ANSWER**:

Defendants admits the allegations of paragraph 35.

**COUNTS PERTAINING TO THE $4,027,550.68 NOTE**

**COUNT I**
**BREACH OF $4,027,550.68 NOTE**

36. FirstMerit hereby realleges and incorporates paragraphs 1 through 35 as though fully alleged herein.

**ANSWER**:

Defendants restate their responses to paragraphs 1 through 35 of the Complaint as their

response to paragraph 36 of Count I of the Complaint, as if fully stated herein.

37.     FirstMerit is now the holder of the $4,027,550.68 Loan and the $4,027,550.68 Note.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 37 of the Complaint, neither admit nor deny the allegations of paragraph 37 of the Complaint, and demands strict proof thereof.

38.     Anchor failed to repay the $4,027,550.68 Note when it matured, on May 5, 2012.

**ANSWER**:

Defendants admit the allegations contained in paragraph 38 of the Complaint.

39.     Anchor's failure to make payments in accordance with the terms of the $4,027,550.68 Note constitutes a breach of the $4,027,550.68 Note.

**ANSWER**:

Defendants deny the allegations contained in paragraph 39 of the Complaint.

40.     Midwest and FirstMerit have performed all obligations required of them under the $4,027,550.68 Note.

**ANSWER**:

Defendants deny the allegations of paragraph 40.

41.     Pursuant to the terms of the $4,027,550.68 Note and the $4,027,550.68 Loan, FirstMerit is entitled to recover its court costs, attorneys' fees and legal expenses, costs of post-judgment collection services and all other sums provided by law in this matter.

**ANSWER**:

Defendants deny the allegations contained in paragraph 41 of the Complaint.

42.    As of August 1, 2013, the amount due and owing includes $3,988,533.82 in principal, $58,515.68 in interest, and $210,286.72 in late fees, plus all costs, attorneys' fees, and all other expenses payable under the $4,027,550.68 Note.

**ANSWER**:

Defendants deny the allegations contained in paragraph 42 of the Complaint.

43.    Interest continues to accrue from and after August 2, 2013 in an amount equal to $415.47 per diem.

**ANSWER**:

Defendants deny the allegations contained in paragraph 43 of the Complaint.

44.    As a result of Anchor's breach, FirstMerit has suffered damages in an amount equal to $4,257,336.22 as of August 1, 2013, plus costs, attorneys' fees, and expenses.

**ANSWER**:

Defendants deny the allegations of paragraph 44.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

## COUNT II
### FORECLOSURE OF WESTERN SPRINGS COLLATERAL ASSIGNMENT

This Count is subject to a pending Motion to Dismiss and thus no answer is necessary.

## COUNT III
### FORECLOSURE OF EQUITABLE MORTGAGE ON THE WESTERN SPRINGS PROPERTY
### (PLED IN THE ALTERNATIVE TO COUNT II)

45.    FirstMerit hereby incorporates paragraphs 1 through 35, and paragraphs 49(h) through 49(t) of Count II, as though fully alleged herein.

**ANSWER**:

Defendants restate their answers to paragraphs 1 through 35, and paragraphs 49(h) through 49(t) of Count II as their answer to paragraph 45 of Count III of the Complaint, as if fully stated herein.

46.     The Western Springs Collateral Assignment secures the $4,027,550.68 Note.

**ANSWER**:

Defendants deny the allegations contained in paragraph 46 of the Complaint.

47.     Pursuant to the Western Springs Collateral Assignment, Anchor was prohibited from selling the Western Springs Property, or causing the judicial sale of the Western Springs Property, without first obtaining the written consent of Midwest or its successor, FirstMerit.  See **Exhibit G**, para. 6.

**ANSWER**:

Defendants state that the document speaks for itself and denies all allegations inconsistent therewith.

48.     Anchor failed to obtain the written consent of Midwest or FirstMerit prior to the judicial sale of the Western Springs Property, where Anchor was the successful bidder.

**ANSWER**:

Defendants deny they were required to obtain the written consent of Midwest or First Merit.

49.     As a result of Anchor's failure to obtain written consent, the Western Springs Collateral Assignment "shall be converted into and shall be deemed a mortgage upon [Anchor's] interest in the [Western Springs Property] … immediately upon [Anchor'] acquisition thereof".  See **Exhibit G**, para. 6.  (Emphasis removed.)

**ANSWER**:

Defendants state that the document speaks for itself and denies all allegations inconsistent therewith, and further denies that the Collateral Assignment was converted into a Mortgage.

50.    Pursuant to the provision outlined in the preceding paragraph, Anchor's liability to Midwest under the $4,027,550.68 Loan adhered to the Western Springs Property upon Anchor's violation paragraph 6 of the Western Springs Collateral Assignment.

**ANSWER**:

Defendants deny the allegations contained in paragraph 50 of the Complaint.

51.    The Western Springs Property is described in the Western Springs Collateral Assignment by PIN, common address, and legal description, and thus it can be identified with reasonable certainty.

**ANSWER**:

Defendants deny the allegations contained in paragraph 51 of the Complaint.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

### COUNT IV
### FORECLOSURE OF ELMHURST COLLATERAL ASSIGNMENT

This Count is subject to a pending Motion to Dismiss and thus no answer is necessary.

### COUNT V
### FORECLOSURE OF EQUITABLE MORTGAGE ON THE ELMHURST PROPERTY
### (PLED IN THE ALTERNATIVE TO COUNTY IV)

52.    FirstMerit hereby incorporates paragraphs 1 through 35, and paragraphs 61(h) through 61(t) of Count IV, as though fully alleged herein.

**ANSWER**:

Defendants restate their responses to paragraphs 1 through 35, and paragraphs 61(h)

- 15 -

through 71(t) of Count IV of the Complaint as their response to paragraph 52 of Count V of the Complaint, as if fully stated herein.

53.     The Elmhurst Collateral Assignment secures the $4,027,550.68 Note.

**ANSWER**:

Defendants denies the allegations contained in paragraph 53 of the Complaint.

54.     Pursuant to the Elmhurst Collateral Assignment, Anchor was prohibited from selling the Elmhurst Property, or causing the judicial sale of the Elmhurst Property, without first obtaining the written consent of Midwest or its successor, FirstMerit.  See **Exhibit H**, para. 6.

**ANSWER**:

Defendants state that the document speaks for itself and denies all allegations inconsistent therewith.

55.     Anchor failed to obtain the written consent of Midwest or FirstMerit prior to the judicial sale of the Elmhurst Property, where Anchor was the successful bidder.

**ANSWER**:

Defendants deny they were required to obtain the written consent prior to the judicial sale.

56.     As a result of Anchor's failure to obtain written consent, the Elmhurst Collateral Assignment "shall be converted into and shall be deemed a mortgage upon [Anchor's] interest in the [Elmhurst Property] … immediately upon [Anchor'] acquisition thereof".  See **Exhibit H**, para. 6.  (Emphasis removed.)

**ANSWER**:

Defendants state that the document speaks for itself and denies all allegations inconsistent therewith, and further denies that the Collateral Assignment was converted into a Mortgage.

57. Pursuant to the provision outlined in the preceding paragraph, Anchor's liability to Midwest under the $4,027,550.68 Loan adhered to the Elmhurst Property upon Anchor's violation paragraph 6 of the Elmhurst Collateral Assignment.

**ANSWER**:

Defendants deny the allegations contained in paragraph 57 of the Complaint.

58. The Elmhurst Property is described in the Elmhurst Collateral Assignment by PIN, common address, and legal description, and thus it can be identified with reasonable certainty.

**ANSWER**:

Defendants deny the allegations contained in paragraph 58 of the Complaint.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

### COUNT VI
### FORECLOSURE OF HINSDALE COLLATERAL ASSIGNMENT

This Count is subject to a pending Motion to Dismiss and thus no answer is necessary.

### COUNT VII
### FORECLOSURE OF EQUITABLE MORTGAGE ON THE HINSDALE PROPERTY
### (PLED IN THE ALTERNATIVE TO COUNT VI)

59. FirstMerit hereby incorporates paragraphs 1 through 35, and paragraphs 73(h) through 73(t) of Count VI, as though fully alleged herein.

**ANSWER**:

Defendants restate their responses to paragraphs 1 through 35, and paragraphs 73(h) through 73(t) of Count VI of the Complaint as their response to paragraph 59 of Count VII of the

Complaint, as if fully stated herein.

60.     The Hinsdale Collateral Assignment secures the $4,027,550.68 Note.

**ANSWER**:

Defendants deny the allegations contained in paragraph 60 of the Complaint.

61.     Pursuant to the Hinsdale Collateral Assignment, Anchor was prohibited from selling the Hinsdale Property, or causing the judicial sale of the Hinsdale Property, without first obtaining the written consent of Midwest or its successor, FirstMerit.  See **Exhibit I**, para. 6.

**ANSWER**:

Defendants state that the document speaks for itself and deny all allegations inconsistent therewith.

62.     Anchor failed to obtain the written consent of Midwest or FirstMerit prior to the judicial sale of the Hinsdale Property, where Anchor was the successful bidder.

**ANSWER**:

Defendants deny they were obligated to obtain the written consent of Plaintiff or Midwest prior to the judicial sale.

63.     As a result of Anchor's failure to obtain written consent, the Hinsdale Collateral Assignment "shall be converted into and shall be deemed a mortgage upon [Anchor's] interest in the [Hinsdale Property] … immediately upon [Anchor'] acquisition thereof".  See **Exhibit I**, para. 6.  (Emphasis removed.)

**ANSWER**:

Defendants state that the document speaks for itself and denies all allegations inconsistent therewith, and further denies that the Collateral Assignment was converted into a Mortgage.

64.     Pursuant to the provision outlined in the preceding paragraph, Anchor's liability

to Midwest under the $4,027,550.68 Loan adhered to the Hinsdale Property upon Anchor's violation paragraph 6 of the Hinsdale Collateral Assignment.

**ANSWER**:

Defendants deny the allegations contained in paragraph 64 of the Complaint.

65.     The Hinsdale Property is described in the Hinsdale Collateral Assignment by PIN, common address, and legal description, and thus it can be identified with reasonable certainty.

**ANSWER**:

Defendants deny the allegations contained in paragraph 65 of the Complaint.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

### COUNT VIII
### BREACH OF $4,027,550.68 GUARANTY

66.     FirstMerit hereby incorporates paragraphs 1 through 35 as though fully alleged herein.

**ANSWER**:

Defendants restate their answers to paragraphs 1 through 35 of the Complaint as their response to paragraph 66 of Count VIII, as if fully stated herein.

67.     FirstMerit is now the holder of the $4,027,550.68 Note and the $4,027,550.68 Guaranty.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 67 of the Complaint, neither admit nor deny the allegations of paragraph 67 of the Complaint, and demands strict proof thereof.

68.     Pursuant to the $4,027,550.68 Guaranty, Tuluce unconditionally and irrevocably guaranteed amounts due by Anchor under the $4,027,550.68 Note.

**ANSWER**:

Defendants state the Guaranty speaks for itself and denies any allegations inconsistent therewith.

69.     In a Notice of Default and Demand Letter dated July 2, 2013, FirstMerit declared Anchor to be in default under the $4,027,550.68 Note for failure to make the required payments pursuant to the terms thereof, and FirstMerit demanded immediate payment of all outstanding amounts due from Tuluce.

**ANSWER**:

Defendants admit the allegations contained in paragraph 69 of the Complaint but deny they are liable.

70.     Tuluce has breached the $4,027,550.68 Guaranty by failing to pay all of the indebtedness evidenced by the $4,027,550.68 Note.

**ANSWER**:

Defendants deny the allegations contained in paragraph 70 of the Complaint.

71.     Midwest and FirstMerit have performed all obligations required of them under the $4,027,550.68 Guaranty.

**ANSWER**:

Defendants deny the allegations of paragraph 71

72.     Pursuant to the terms of the $4,027,550.68 Guaranty, FirstMerit is entitled to recover its court costs, attorneys' fees and legal expenses, costs of post-judgment collection services and all other sums provided by law in this matter.

**ANSWER**:

Defendants deny the allegations contained in paragraph 72 of the Complaint.

73.    As of August 1, 2013, the amount due and owing includes $3,988,533.82 in principal, $58,515.68 in interest, and $210,286.72 in late fees, plus all costs, attorneys' fees, and all other expenses payable under the $4,027,550.68 Note and the $4,027,550.68 Guaranty.

**ANSWER**:

Defendants deny the allegations contained in paragraph 73 of the Complaint.

74.    Interest continues to accrue from and after August 2, 2013 in an amount equal to $415.47 per diem.

**ANSWER**:

Defendants deny the allegations contained in paragraph 74 of the Complaint.

75.    As a result of Tuluce's breach, FirstMerit has suffered damages in an amount equal to $4,257,336.22 as of August 1, 2013, plus costs, attorneys' fees, and expenses.

**ANSWER**:

Defendants deny the allegations of paragraph 75.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

## COUNTS PERTAINING TO THE $400,000.00 NOTE

### COUNT IX
### BREACH OF $400,000.00 NOTE

76.    FirstMerit hereby realleges and incorporates paragraphs 1 through 35 as though fully alleged herein.

**ANSWER**:

Defendants restate their responses to paragraphs 1 through 35 of the Complaint as their response to paragraph 91 of Count IX of the Complaint, as if fully stated herein.

77.     FirstMerit is now the holder of the $400,000.00 Loan and the $400,000.00 Note.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 77 of the Complaint, neither admit nor deny the allegations of paragraph 77 of the Complaint, and demands strict proof thereof.

78.     Anchor failed to repay the $400,000.00 Note when it matured, on May 5, 2012.

**ANSWER**:

Defendants admit the allegations contained in paragraph 78 of the Complaint.

79.     Anchor's failure to make payments in accordance with the terms of the $400,000.00 Note constitutes a breach of the $400,000.00 Note.

**ANSWER**:

Defendants  state the Note speaks for itself and denies any allegations inconsistent therewith.

80.     Midwest and FirstMerit have performed all obligations required of them under the $400,000.00 Note.

**ANSWER**:

Defendants deny the allegations of paragraph 80.

81.     Pursuant to the terms of the $400,000.00 Note and the $400,000.00 Loan, FirstMerit is entitled to recover its court costs, attorneys' fees and legal expenses, costs of post-judgment collection services and all other sums provided by law in this matter.

**ANSWER**:

Defendants deny the allegations contained in paragraph 81 of the Complaint.

82.     As of August 1, 2013, the amount due and owing includes $394,015.95 in principal, $4,596.86 in interest, and $20,683.49 in late fees, plus all costs, attorneys' fees, and all other expenses payable under the $400,000.00 Note.

**ANSWER**:

Defendants deny the allegations contained in paragraph 82 of the Complaint.

83.     Interest continues to accrue from and after August 2, 2013 in an amount equal to $41.04 per diem.

**ANSWER**:

Defendants deny the allegations contained in paragraph 83 of the Complaint.

84.     As a result of Anchor's breach, FirstMerit has suffered damages in an amount equal to $419,296.30 as of August 1, 2013, plus costs, attorneys' fees, and expenses.

**ANSWER**:

Defendants deny the allegations contained in paragraph 84 of the Complaint.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

### COUNT X
### FORECLOSURE OF 2010 WESTERN SPRINGS MORTGAGE

This Count is subject to a pending Motion to Dismiss and thus no answer is necessary.

### COUNT XI
### FORECLOSURE OF 2010 ELMHURST MORTGAGE

This Count is subject to a pending Motion to Dismiss and thus no answer is necessary.

## COUNT XII
### FORECLOSURE OF 2010 HINSDALE MORTGAGE

This Count is subject to a pending Motion to Dismiss and thus no answer is necessary.

## COUNT XIII
### BREACH OF $400,000.00 GUARANTY

85.     FirstMerit hereby incorporates paragraphs 1 through 35 as though fully alleged herein.

**ANSWER**:

Defendants restate their responses to paragraphs 1 through 35 of the Complaint as their response to paragraph 85 of Count XIII of the Complaint, as if fully stated herein.

86.     FirstMerit is now the holder of the $400,000.00 Note and the $400,000.00 Guaranty.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 86 of the Complaint, neither admit nor deny the allegations of paragraph 86 of the Complaint, and demands strict proof thereof.

87.     Pursuant to the $400,000.00 Guaranty, Tuluce unconditionally and irrevocably guaranteed amounts due by Anchor under the $400,000.00 Note.

**ANSWER**:

Defendants state the Guaranty speaks for itself and denies all allegations inconsistent therwith.

88.     In a Notice of Default and Demand Letter dated July 2, 2013, FirstMerit declared Anchor to be in default under the $400,000.00 Note for failure to make the required payments

pursuant to the terms thereof, and FirstMerit demanded immediate payment of all outstanding amounts due from Tuluce.

**ANSWER**:

Defendants admit the allegations contained in paragraph 88 of the Complaint but deny liability.

89.     Tuluce has breached the $400,000.00 Guaranty by failing to pay all of the indebtedness evidenced by the $400,000.00 Note.

**ANSWER**:

Defendants deny the allegations contained in paragraph 89 of the Complaint.

90.     Midwest and FirstMerit have performed all obligations required of them under the $400,000.00 Guaranty.

**ANSWER**:

Defendants deny the allegations contained in paragraph 90 of the Complaint.

91.     Pursuant to the terms of the $400,000.00 Guaranty, FirstMerit is entitled to recover its court costs, attorneys' fees and legal expenses, costs of post-judgment collection services and all other sums provided by law in this matter.

**ANSWER**:

Defendants deny the allegations contained in paragraph 91 of the Complaint.

92.     As of August 1, 2013, the amount due and owing includes $394,015.95 in principal, $4,596.86 in interest, and $20,683.49 in late fees, plus all costs, attorneys' fees, and all other expenses payable under the $400,000.00 Note and $400,000.00 Guaranty.

**ANSWER**:

Defendants deny the allegations contained in paragraph 92 of the Complaint.

93.     Interest continues to accrue from and after August 2, 2013 in an amount equal to $41.04 per diem.

**ANSWER**:

Defendants deny the allegations contained in paragraph 93 of the Complaint.

94.     As a result of Tuluce's breach, FirstMerit has suffered damages in an amount equal to $419,296.30 as of August 1, 2013, plus costs, attorneys' fees, and expenses.

**ANSWER**:

Defendants deny the allegations contained in paragraph 94 of the Complaint.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

## COUNTS PERTAINING TO THE $386,193.66 NOTE

### COUNT XIV
### BREACH OF $386,193.66 NOTE

95.     FirstMerit hereby realleges and incorporates paragraphs 1 through 35 as though fully alleged herein.

**ANSWER**:

Defendants restate their responses to paragraphs 1 through 35 of the Complaint as their response to paragraph 95 of Count XIV of the Complaint, as if fully stated herein.

96.     FirstMerit is now the holder of the $386,193.66 Loan and the $386,193.66 Note.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 96 of the Complaint, neither admit nor deny the allegations of paragraph 96 of the Complaint, and demands strict proof thereof.

97.     Anchor failed to repay the $386,193.66 Note when it matured, on July 31 2012.

**ANSWER**:

Defendants admit the allegations contained in paragraph 97 of the Complaint.

98.     Anchor's failure to make payments in accordance with the terms of the $386,193.66 Note constitutes a breach of the $386,193.66 Note.

**ANSWER**:

Defendants state that paragraph 98 states a legal conclusion for which no answer is necessary.

99.     Midwest and FirstMerit have performed all obligations required of them under the $386,193.66 Note.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 99 of the Complaint, neither admit nor deny the allegations of paragraph 99 of the Complaint, and demands strict proof thereof.

100.    Pursuant to the terms of the $386,193.66 Note and the $386,193.66 Loan, FirstMerit is entitled to recover its court costs, attorneys' fees and legal expenses, costs of post-judgment collection services and all other sums provided by law in this matter.

**ANSWER**:

Defendants deny the allegations contained in paragraph 100 of the Complaint.

101.    As of August 1, 2013, the amount due and owing includes $376,199.14 in principal, $15,136.43 in interest, $28,340.28 in late fees, plus all costs, attorneys' fees, and all other expenses payable under the $386,193.66 Note.

**ANSWER**:

Defendants deny the allegations contained in paragraph 101 of the Complaint.

102.    Interest continues to accrue from and after August 2, 2013 in an amount equal to $62.70 per diem.

**ANSWER**:

Defendants deny the allegations contained in paragraph 102 of the Complaint.

103.    As a result of Anchor's breach, FirstMerit has suffered damages in an amount equal to $419,675.85 as of August 1, 2013, plus costs, attorneys' fees, and expenses.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 103 of the Complaint, neither admit nor deny the allegations of paragraph 103 of the Complaint, and demands strict proof thereof.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

### COUNT XV
### FORECLOSURE OF SKOKIE MORTGAGE

104.    FirstMerit hereby incorporates paragraphs 1 through 35 as though fully alleged herein.

**ANSWER**:

Defendants restate their responses to paragraphs 1 through 35 of the Complaint as their response to paragraph 104 of Count XV of the Complaint, as if fully stated herein.

105.    FirstMerit joins as parties hereto the following persons or entities: Anchor and Tuluce.

**ANSWER**:

Defendants are making a statement for which no response is required.

106.     Attached as **Exhibit R** is a true and correct copy of the Skokie Mortgage dated March 27, 2008, wherein Anchor granted Midwest an interest in property located at 4844 Main Street, Skokie, Illinois 60077 (the "Skokie Property") to secure the $386,193.66 Note.

**ANSWER**:

Defendants state that the document speaks for itself.

107.     Attached as **Exhibit Q** is a true and correct copy of the $386,193.66 Note originally dated March 27, 2008, made by Anchor and payable to Midwest, which is secured by the Skokie Mortgage.

**ANSWER**:

Defendants state that the document speaks for itself.

108.     Information concerning the Mortgage:

     a.     Nature of instrument: Mortgage

     b.     Date of Mortgage: March 27, 2008

     c.     Name of Mortgagor: Anchor

     d.     Name of Mortgagee: FirstMerit, as successor in interest to Midwest

     e.     Date & Place of Recording: March 28, 2008, in the offices of the Cook County Recorder of Deeds

     f.     Identification of Recording: 0808809065

     g.     Interest Subject to Mortgage: Fee Simple

     h.     Amount of original indebtedness, including subsequent advances made under the Mortgage: Three Hundred Eighty Six Thousand One Hundred Ninety Three and 66/100 ($386,193.66)

     i.     Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

          1.     Legal description:

LOT 16 (EXCEPT THE SOUTH 7 FEET THEREOF) IN MAIN STREET AND CICERO AVENUE SUBDIVISION IN THE SOUTH QUARTER OF THE SOUTH ½ OF THE NORTHEAST ¼ OF SECTION 21, TOWNSHIP 41 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY ILLINOIS.

2.      Common address:

4844 Main Street, Skokie, Illinois 60077

3.      PIN:

10-21-226-021-0000

j.      Statement as to defaults, including, but not limited to, date of default, current unpaid principal balance, per diem interest accruing, and any other information concerning the default:

1.      Anchor failed to repay the $386,193.66 Note when it matured on July 31, 2012.  This failure to make payments in accordance with the terms of the $386,193.66 Note is a breach thereof.

2.      The current unpaid principal balance is $376,199.14, and the total amount now due includes the principal balance, interest, late fees, costs, attorneys' fees, and all other expenses payable under the Skokie Mortgage and $386,193.66 Note.

3.      The per diem interest accruing under the $386,193.66 Note after default is $62.70.

k.      Names of present owners of the real estate: Anchor

l.      Names of other persons who are joined as Defendants and whose interests in or lien on the mortgaged real estate are sought to be terminated: Tuluce

m.      Names of Defendants claimed to be personally liable for deficiency: Anchor and Tuluce

n.      Capacity in which FirstMerit brings this foreclosure: FirstMerit is the legal holder of the $386,193.66 Note evidencing the indebtedness and owner of the Skokie Mortgage given as security therefor by virtue of the fact that FirstMerit is the successor in interest to the original lender and mortgagee.

o.      Facts in support of shortened redemption period: Unless otherwise alleged, FirstMerit will pray for a shorted redemption period after the filing of the instant foreclosure action by separate petition if a shortened redemption is sought.

p.     Statement that the right of redemption has been waived by all owners of redemption, if applicable: Anchor has waived any and all rights of redemption pursuant to the terms of the Skokie Mortgage.

q.     Facts in support of request for attorneys' fees and of costs and expenses, if applicable: The Skokie Mortgage and $386,193.66 Note allow for the recovery of all expenditures and expenses which may be incurred on behalf of the mortgagee, including, but not limited to, attorneys' fees and legal expenses, court costs, title expenses, costs of post-judgment collection services, costs of searching records, costs of surveyors' reports and costs of appraisal, to the extent permitted by applicable law. FirstMerit has been required to retain counsel for prosecution of this foreclosure and to incur substantial attorneys' fees, court costs, title insurance or abstract costs, and other expenses that should be added to the balance secured by said Skokie Mortgage.

r.     Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and the identity of such receiver, if sought: Unless otherwise alleged, FirstMerit will pray for said relief after the filing of the instant foreclosure action by separate petition if such relief is sought.

s.     Offer to Mortgagor in accordance with 735 ILCS 5/15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the Mortgage without judicial sale: No allegation of an offer is made. However, FirstMerit alleges that it is not precluded from making or accepting such offer by the filing of the instant foreclosure action.

t.     Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof: Anchor and Tuluce

**ANSWER**:

Defendants and deny paragraphs 108(j) and 108(n) of the Complaint.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

**COUNT XVI**
**BREACH OF $386,193.66 GUARANTY**

109.    FirstMerit hereby incorporates paragraphs 1 through 35 as though fully alleged herein.

**ANSWER**:

Defendants restate their responses to paragraphs 1 through 35 of the Complaint as their response to paragraph 109 of Count XVI of the Complaint, as if fully stated herein.

110.    FirstMerit is now the holder of the $386,193.66 Note and the $386,193.66 Guaranty.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 110 of the Complaint, neither admit nor deny the allegations of paragraph 110 of the Complaint, and demands strict proof thereof.

111.    Pursuant to the $386,193.66 Guaranty, Tuluce unconditionally and irrevocably guaranteed amounts due by Anchor under the $386,193.66 Note.

**ANSWER**:

Defendants state that paragraph 111 speaks for itself and denies all allegations inconsistent therewith.

112.    In the Notice of Default and Demand Letter dated July 2, 2013, FirstMerit declared Anchor to be in default under the $386,193.66 Note for failure to make the required payments pursuant to the terms thereof, and FirstMerit demanded immediate payment of all outstanding amounts due from Tuluce.

**ANSWER**:

Defendants admit the allegations contained in paragraph 112 of the Complaint but deny liability.

113.    Tuluce has breached the $386,193.66 Guaranty by failing to pay the indebtedness evidenced by the $386,193.66 Note.

**ANSWER**:

Defendants deny the allegations contained in paragraph 113 of the Complaint.

114.    Midwest and FirstMerit have performed all obligations required of them under the $386,193.66 Guaranty.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 114 of the Complaint, neither admit nor deny the allegations of paragraph 114 of the Complaint, and demands strict proof thereof.

115.    Pursuant to the terms of the $386,193.66 Guaranty, FirstMerit is entitled to recover its court costs, attorneys' fees and legal expenses, costs of post-judgment collection services and all other sums provided by law in this matter.

**ANSWER**:

Defendants deny the allegations contained in paragraph 115 of the Complaint.

116.    As of August 1, 2013, the amount due and owing includes $376,199.14 in principal, $15,136.43 in interest, $28,340.28 in late fees, plus all costs, attorneys' fees, and all other expenses payable under the $386,193.66 Note and $386,193.66 Guaranty.

**ANSWER**:

Defendants deny the allegations contained in paragraph 116 of the Complaint.

117.    Interest continues to accrue from and after August 2, 2013 in an amount equal to $62.70 per diem.

**ANSWER**:

Defendants deny the allegations contained in paragraph 117 of the Complaint.

118.    As a result of Tuluce's breach, FirstMerit has suffered damages in an amount equal to $419,675.85 as of August 1, 2013, plus costs, attorneys' fees, and expenses.

**ANSWER**:

Defendants, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 118 of the Complaint, neither admit nor deny the allegations of paragraph 118 of the Complaint, and demands strict proof thereof.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
*(Standing)*

1.    Plaintiff is not the named lender under the Notes, Guaranties, Collateral Assignments and Mortgages referenced in the Complaint.

2.    Accordingly, Plaintiff has no standing to bring this lawsuit.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

### SECONDAFFIRMATIVE DEFENSE
*(Unclean Hands)*

1.    As set forth in the Affidavit of Emin Tuluce attached to Defendants' Motion to Dismiss, Midwest Bank engaged in a scheme to defraud Defendants, including, but not limited to, forging documents that are the subject of this lawsuit, concealing probative terms related to

the Foreclosed Properties, coercing Defendants to sign certain documents under duress, acting in a consistent fraudulent manner throughout the loan process relating to the transactions that are the subject of this lawsuit.

2.     Accordingly, Plaintiff has unclean hands are should be deprived all equitable and legal recovery

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

### THIRDAFFIRMATIVE DEFENSE
*(Fraud)*

1.     As set forth in the Affidavit of Emin Tuluce attached to Defendants' Motion to Dismiss, Midwest Bank engaged in a scheme to defraud Defendants, including, but not limited to, forging documents that are the subject of this lawsuit, concealing probative terms related to the Foreclosed Properties, coercing Defendants to sign certain documents under duress, acting in a consistent fraudulent manner throughout the loan process relating to the transactions that are the subject of this lawsuit.

2.     Accordingly, Plaintiff's fraud bars its right to equitable and legal recovery.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

### FOURTH AFFIRMATIVE DEFENSE
*(Fraud)*

1.     Pursuant to the $400,000 Note, Plaintiff agreed not to seek any collateral to secure that Note.

2.　　　In 2010, without Defendants knowledge or consent, Plaintiff tricked Defendants into signing mortgages to secure that Note.

3.　　　Accordingly, Plaintiff's breached the $400,000 Note.

4.　　　Plaintiff's breach excused Defendants' performance thereunder.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

*FIFTH AFFIRMATIVE DEFENSE*
*(Setoff)*

1.　　　Plaintiff's fraud and breaches of the $400,000 Note caused Defendants to incur damages.

2.　　　The damages incurred by Defendants should be set-off from all amounts recovered by Plaintiff in this lawsuit.

WHEREFORE, Defendants, Anchor Properties, Inc. and Emin Tuluce, pray that this Court dismiss the instant action against them; and for such other and further relief as this Court deems just and proper.

**ANCHOR PROPERTIES, INC. AND EMIN TULUCE,**
Defendants


By**:**＿＿＿＿/s/ Ariel Weissberg＿＿＿＿＿＿
　　　One of their attorneys


Ariel Weissberg, Esq. (No. 03125591)
Rakesh Khanna, Esq. (No. 06243244)
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, IL  60605
T. 312-663-0004
F. 312-663-1514

<u>**CERTIFICATE OF SERVICE**</u>

   I, Ariel Weissberg, certify that on October 30, 2013, I caused the foregoing ***DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT FOR FORECLOSURE AND OTHER RELIEF*** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

     _____/s/ Ariel Weissberg_____
       Ariel Weissberg